IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02799-KLM

MICHAEL MASCARENAS,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant American Family Mutual Insurance Company's Motion for Summary Judgment** [#24][1] (the "Motion").[2]  Plaintiff filed a Response [#25] to the Motion.  Defendant filed a Reply [#26] in further support of the Motion.  The Motion is ripe for resolution.  The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#24] is **DENIED**.

## I. Background

In this action, Plaintiff seeks underinsured motorist benefits from Defendant and brings related breach of contract, negligence, and statutory claims, for which he seeks

---

[1] "[#24]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order.

[2] The case has been referred to the undersigned for all purposes [#18] pursuant to the Court's Pilot Program and 28 U.S.C. § 636(c), on consent of the parties [#17].

damages. *Compl.* [#3] ¶¶ 15-44. Specifically, Plaintiff brings the following claims: (1) negligence; (2) breach of contract for failure to provide underinsured motorist benefits; (3) a claim titled "Claim for Underinsured Motorist Benefits" that alleges that "Defendant has failed to provide" benefits due to Plaintiff under his insurance contract; (4) a claim of bad faith breach of contract; and (5) a claim for violation of Colo. Rev. Stat. §§ 10-3-115 and 10-3-116. *Id.*

In the Motion, Defendant argues that Plaintiff's negligence claim is not recognized under Colorado law. *Motion* [#24] at 4. Defendant further argues that Plaintiff's remaining claims are barred by the applicable statutes of limitations. *Motion* [#24] at 4-7. Defendant also argues that Plaintiff's third claim is duplicative of his breach of contract claim. *Id.* at 5-6.

In his Response, Plaintiff withdraws his negligence claim. *Response* [#25] at 3. With regard to the claims governed by a two-year statute of limitations, Plaintiff argues that the date of accrual—the date he received payment of insurance benefits—was September 10, 2012, not July 23, 2012. Plaintiff offers an affidavit signed by his attorney stating that the date provided in Plaintiff's response to Interrogatory No. 27 was provided in error. *Id.* at 3; *see generally, Motion, Ex. 7.* With regard to Plaintiff's fifth claim, which Defendant argues is governed by a one-year statute of limitations, Plaintiff simply refers to his arguement regarding the claims governed by a two-year statute of limitations. *Response* [#25] at 5 ("Plaintiff incorporates the analysis contained in Section VII above . . . ."). In addition, Plaintiff does not address Defendant's agreement that his third claim is duplicative of his breach of contract claim.

In its Reply, Defendant asks the Court to disregard the affidavit signed by Plaintiff's

attorney, arguing that it is a sham affidavit that is contradicted by both the sworn interrogatory response disclosed by Plaintiff and by his deposition testimony. *Reply* [#26] at 2. Defendant further argues that the documentary evidence provided by Plaintiff with his Response does not substantiate his position that he received payment of $100,000 from State Farm on September 10, 2012. *Id.* at 4. In addition, Defendant revisits its arguments with regard to Plaintiff's bad faith claim and his statutory claim. *Id.* at 5-6.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321,

1326 (10th Cir. 1999), abrogation recognized by *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that adhere to the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>
> ...
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III. Facts

As discussed above, a motion for summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In support of its Motion, Defendant offers the following undisputed facts, which are supported by documentary evidence:

**A.     Undisputed Facts**

- Plaintiff was involved in a motor vehicle accident on or around July 9, 2011. *Motion* [#24] at 2; *Compl.* [#3] ¶ 5.

- Plaintiff suffered injuries as a result of that motor vehicle accident. *Motion* [#24] at 2; *Compl.* [#3] ¶¶ 7-9.

- Plaintiff settled with the at-fault driver's insurance company, State Farm, for the $100,000 policy limits. *Motion* [#24] at 2; *Compl.* [#3] ¶ 11.

- Plaintiff alleges that the $100,000 payment did not fully compensate him for his injuries. *Motion* [#24] at 2; *Compl.* [#3] ¶ 12.

- Plaintiff notified Defendant of a possible underinsured motorist claim on August 3, 2011. *Motion* [#24] at 2; *Motion*, Ex. B at 2.

- Plaintiff filed his Complaint on August 21, 2014. *Motion* [#24] at 2; *see generally Compl.* [#3].

**B.     Disputed Fact**s

Plaintiff begins his Response by unequivocally stating that he

> does not dispute Defendant's account of the events leading up to filing of suit in this matter. Plaintiff does dispute that he was or is at maximum medical improvement, as is evidenced by his ongoing treatment and by the fact that he underwent surgery for accident-related injuries on July 30, 2015.

*Response* [#25] at 1. This seems to be an admission that Plaintiff does not challenge any of the other facts included in Defendant's Statement of Facts. *See Motion* [#24] at 2-3. However, Plaintiff then takes issue with the following fact offered by Defendant in support of its Motion:

- Plaintiff received the $100,000 policy limit payment on July 23, 2012. *Motion* [#24] at 2; *Motion, Ex. A* [#24-1] at 2 (response to Interrogatory No. 27).

Plaintiff offers the following facts in his Response:

- Plaintiff incorrectly stated in his response to Defendant's interrogatories that he received the $100,000 policy limit payment on July 23, 2012. *Response* [#25] at 2.

- Plaintiff did not formally accept the $100,000 policy limit offer until August 22, 2012. *Id.*

- Payment of the $100,000 policy limit was predicated on the Plaintiff signing a release of all claims, which was not done until September 5, 2015. *Id.*

- The $100,000 policy limit payment was not issued until September 10, 2012. *Id.*

- Plaintiff received his portion of the $100,000 policy limit payment on September 20, 2012. *Id.*

Plaintiff then notes that he would like to amend his response to Interrogatory No. 27. *Id.*[3] In support of these facts, Plaintiff attaches: (1) an August 22, 2012 letter from Plaintiff's attorney to State Farm stating that he "accepts State Farm's offer to resolve his liability claim . . . ." *Response, Ex. 2* [#25-2] (the "August Letter") at 1; (2) a release signed by Plaintiff and dated September 5, 2012, *Response, Ex. 3* [#25-3] (the "Release") at 1; (3) a check from State Farm to Plaintiff for $80,000 dated September 10, 2012, *Response, Ex. 4* [#25-4] at 1; (4) a check that Plaintiff states is from his attorney to him dated September 20, 2012 in the amount of $46,266.53, *Response, Ex. 5* [#25-5] at 1; (5) the Affidavit of Eli Ohlhausen, which states that Plaintiff's response to Interrogatory No. 27 "was incorrect, as it represented the date the $100,000 was offered in settlement, not the date of payment of those funds."), *Response, Ex. 7* [#25-7] ("Ohlhausen Affidavit") ¶ 6; and (6) a December 21, 2012 letter from Defendant to Plaintiff requesting an update on the status of Plaintiff, *Response, Ex. 8* [#25-8] at 1 (the "December Letter").

Defendant argues that the Ohlhausen Affidavit should be treated as a sham affidavit

---

[3] Plaintiff also attaches a motion requesting this relief as an exhibit to his Response. *See generally Response, Ex. 6* [#25-6]. This is improper and will be disregarded by the Court. D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.").

and disregarded by the Court. *Reply* [#26] at 2-4.

> Sham affidavits, though "unusual," arise when a witness submits an affidavit that contradicts the witness's prior testimony. *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir.2009). Although "[a]n affidavit may not be disregarded solely because it conflicts with the affiant's prior sworn statements," we may nonetheless disregard a conflicting affidavit if it "constitutes an attempt to create a sham fact issue." *Id.* (quotations omitted). "In determining whether an affidavit creates a sham fact issue, we consider whether: '(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.'" *Id.* (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001)).

*Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014). In this case, Plaintiff's attorney submitted an affidavit that, in essence, states that the response to Interrogatory No. 27 was incorrect and attempts to correct that error. The Court does not find this to be a sham affidavit as defined above, but rather an improper attempt to correct an error in a discovery response. If a party incorrectly responds to an interrogatory, he must amend that response to correct the record. *See* Fed. R. Civ. P. 26(e)(1)(A). As noted above, Plaintiff's attempt to do so through his Response is improper and the Court will not grant such relief when ruling on the instant Motion. However, when considering the arguments raised in the Motion, the Court must determine whether there are disputed material facts. The date when Plaintiff received payment from State Farm is a material[4] fact because the statute of limitations for Plaintiff's breach of contract claim is triggered by that date. *See* Colo. Rev. Stat. § 13-80-107.5(1)(b) ("an underinsured motorist claim shall

---

[4] "A fact is 'material' if it is essential to proper disposition of the claim under the relevant substantive law." *Ellis v. J.R.'s Country Stores, Inc.*, No. 12-cv-01916-CMA-KLM, 2013 WL 3661665, at *2 (D. Colo. July 12, 2013) (citing *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-21 (10th Cir. 2001)).

be timely if such action is commenced . . . within two years after the insured received payment of the settlement or judgment on the underlying bodily injury liability claim . . . ."). As a result, the Court considers whether it may credit the Ohlhausen Affidavit.

Notably, Mr. Ohlhausen is counsel of record for Plaintiff. As such, he cannot both represent Plaintiff at trial and testify as a witness regarding a contested factual issue. *See, e.g.*, *Firehouse Restaurant Grp., Inc. v. Scurmont LLC*, 2011 WL 3555704, at *5 (D.S.C. Aug. 11, 2011) (finding that "an attorney of record . . . cannot testify as a witness."); *see also United States v. Birchem*, 883 F.Supp. 1334, 1342 (D.S.D. 1995) ("[T]he attorney of record may not testify regarding contested matters."). Specifically, Colo. RPC 3.7 states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> > (3) disqualification of the lawyer would work substantial hardship on the client . . . .

As a result, counsel's attempt to offer fact testimony about a contested issue in this case may conflict with his obligation to act as an advocate for his client at trial. This means that submission of the Ohlhausen Affidavit may create an ethical conflict that is governed by Colo. RPC 3.7.[5] This potential conflict does not necessarily mean that the Court cannot credit the affidavit; that is a separate analysis. However, this conflict does create an issue in this case given that trial is set to begin on February 1, 2016 and Colo. RPC 3.7 may

---

[5] The Court notes that Colo. RPC 3.7 "has been narrowly construed to apply only to trial proceedings." *Mitchell v. McGovern*, No. 15-cv-00559-CMA-CBS, 2015 WL 4748023, at *2 (D. Colo. Aug. 12, 2015). However, the Court raises this issue in order to ensure that this case is not unnecessarily delayed as a result of counsel being named as a fact witness for trial.

require that Plaintiff obtain new trial counsel.[6] *See, e.g., Fognani v. Young*, 115 P.3d 1268, 1271-79 (Colo. 2005) (discussing disqualification of attorney); *Brown v. Encompass Ins. Co. of Am.*, No. 14-cv-01885-RM-BNB, 2014 WL 7177378, at *3 (D. Colo. Dec. 16, 2014) (same). Of course, if Plaintiff offered this testimony through submission of his own affidavit, this would not be an issue. Nevertheless, that is not the route chosen here and the Court is inclined to raise this issue so that Plaintiff can make an informed decision about how to proceed in this case.

Next, the Court considers whether the Ohlhausen Affidavit can be considered as evidence in this case. As the Tenth Circuit has made clear,

> Affidavits must contain certain indicia of reliability. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings[; they] must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted). Information presented in the nonmovant's affidavit must be "based on personal knowledge and [must set] forth facts that would be admissible in evidence. We do not consider conclusory and self-serving affidavits." *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) (citation omitted) (quoting *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)) (internal quotation marks omitted).

*Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015). The August Letter informs State Farm that Plaintiff will settle his claim against the other driver for $100,000. *August Letter* [#25-2] at 1. Obviously, August 22, 2012 is after July 23, 2012, the date Plaintiff claimed to have received $100,000 from State Farm in his response to Interrogatory No. 27. Similarly, the Release Plaintiff signed and returned to State Farm relating to the July 9, 2011 motor vehicle accident is dated September 5, 2012. *Release*

---

[6] The key to this question is whether Mr. Ohlhausen's submission of an affidavit has made him a "necessary witness" for trial. *See Brown*, 2014 WL 7177378, at *3. At this time the Court takes no position with regard to this question.

[#25-3] at 1. It seems improbable that an insurance company would send a settlement check to Plaintiff in July 2012 for claims that he had neither agreed to settle nor released. These two documents, therefore, support the statement in the Ohlhausen Affidavit that Plaintiff's response to Interrogatory No. 27 was incorrect and that the settlement payment was made on September 10, 2012. *Ohlhausen Aff.* [#25-7] ¶¶ 6-7. However, the check dated September 10, 2012 provided by Plaintiff is for $80,000, not $100,000. *Response, Ex. 4* [#25-4] at 1. Plaintiff does not explain this discrepancy. Even without such an explanation, the Court finds that the Ohlhausen Affidavit, the August Letter, and the Release establish that there is a genuine[7] dispute regarding the date Plaintiff received payment from State Farm. *See Reyes v. Snowcap Creamery, Inc.*, No. 11-cv-02755-WJM-KMT, 2013 WL 4229835, at *1 (D. Colo. Aug. 14, 2013) (citing *Anderson*, 477 U.S. at 248) ("Whether there is a genuine dispute as to a material fact depends [on] whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.").

While Plaintiff does not address them in his "Statement of Facts," he also appears to take issue with the following facts offered by Defendant in the Motion:

- Defendant notified Plaintiff's counsel via telephone on August 20, 2012 that it believed Plaintiff had been fully compensated by the $100,000 payment. *Motion* [#24] at 2; *Motion, Ex. C* [#24-3] at 2 (claim notes produced by Defendant).

- Plaintiff's counsel called Defendant on August 21, 2012 and thanked Defendant for the notice of denial. *Motion* [#24] at 2; *Motion, Ex. C* [#24-3] at 2 (claim notes produced by Defendant).

---

[7] "A dispute is 'genuine' if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party." *Id.* (citing *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997)).

The claim notes indicate that Defendant contacted Plaintiff's attorney on August 20, 2012 and "[l]et them know we feel [Plaintiff] has been fully compensated for the claim and that I will follow up with a letter." *Motion, Ex. C* [#24-3] at 1.  The notes also reflect that on August 21, 2012, Plaintiff's counsel called Defendant and "thanked [them] for the notice of the denial at this time. [Plaintiff] is actually going back for additional treatment from a neurologist so he is not completely done yet.  Let her know I would keep the file open.  She asked about subro and their authority to settle with the underlying carrier. . . ." *Id.*

Plaintiff does not offer contradictory facts in his "Statement of Facts," but as part of his argument, he states:

> Contrary to Defendant's assertion, Plaintiff was not aware that Defendant was refusing to pay his underinsured motorist claim on August 20, 2012.  While Defendant did advise Plaintiff that it believed he had been fully compensated by the $100,000 underlying bodily injury liability payment at that time, as late as October 22, 2012,[8] Defendant indicated that it was still considering payment of the underinsured motorist claim.

*Response* [#25] at 4-5.  Plaintiff cites to the December Letter [#25-8] to support this statement.  The December Letter states, in pertinent part:

> Please provide the status of your client's claim.  If you have documentation, medical bills, and/or records, please forward for our review.
>
> Please forward any additional medical information you have received since our last correspondence.  If your client has completed treatment, please contact me to discuss the possibility of settlement.
>
> Please have your client complete the enclosed authorization(s) so that we might obtain updated medical and/or wage loss information.

*December Letter* [#25-8] at 1.

---

[8] The Court assumes this date is a typographical error because the document referenced in support of this statement is dated December 21, 2012.

11

This allegedly disputed fact—the date Plaintiff was notified of the denial of his claim by Defendant—relates to the parties' arguments regarding the statute of limitations for Plaintiff's bad faith breach of contract claim and his claim brought under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. As discussed in Section IV.D. below, the Court resolves this portion of the Motion based on other facts and, therefore, does not determine whether this is a genuine issue as to a material fact. The Court addresses this alleged disputed material fact below in section IV.E., when discussing Plaintiff's statutory claims.

### IV.  Analysis

As noted above, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.

**A.    Negligence Claim**

As discussed above, Plaintiff has withdrawn this claim. *Response* [#25] at 3. As a result, the Court **denies** the Motion as moot to the extent it seeks summary judgment with regard to Plaintiff's negligence claim. Plaintiff's negligence claim is hereby deemed withdrawn.

**B.    Breach of Contract**

Defendant argues that Plaintiff's breach of contract claim is time-barred. *Motion* [#24] at 4-5. The parties agree that this claim is governed by Colo. Rev. Stat. § 13-80-107.5(1)(b)'s two-year statute of limitations and that the claim must be filed "within two years after the insured received payment of the settlement or judgment on the underlying bodily injury liability claim . . . ." *Motion* [#24] at 5; *Response* [#25] at 3. The parties simply

disagree about when Plaintiff received payment from State Farm. If, as stated in Plaintiff's response to Interrogatory No. 27, he received payment on July 23, 2012, his claim is barred. However, if he received payment on September 10, 2012, as the Ohlhausen Affidavit, the Release, and the August Letter indicate, the claim is not barred. As explained above, there is a genuine dispute about this material fact. As a result, the Court **denies** the Motion to the extent it seeks summary judgment with regard to Plaintiff's breach of contract claim.

**C.    Plaintiff's Third Claim**

Defendant maintains that Plaintiff's third claim is duplicative of Plaintiff's breach of contract claim and that it is time-barred. Based on the Court's analysis in Section IV. B. above, the Court **denies** the Motion to extent it argues that this claim is time-barred.

Plaintiff does not address Defendant's argument that this claim is "impermissibly duplicative." *Motion* [#24] at 6. However, Defendant provides no legal analysis that it is entitled to summary judgment on this claim simply because it is duplicative. Without any legal authority, the Court declines to grant the requested relief. It is not the Court's role to supply legal support for a litigant's position. *See Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[D]istrict courts . . . have a limited and neutral role in the adversarial process, and [ought to be] wary of becoming advocates who comb the record . . . and make a party's case for it."); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). As a result, the

Court **denies** the Motion to the extent it requests summary judgment on Plaintiff's third claim based on the claim being duplicative of Plaintiff' breach of contract claim.

**D.     Bad Faith Breach of Contract Claim**

Defendant argues that Plaintiff's bad faith breach of contract claim is time-barred. *Motion* [#24] at 6-7.  The parties agree that this claim is governed by a two-year statute of limitations pursuant to Colo. Rev. Stat. § 13-80-102 and that this cause of action accrued when both the nature of the injury and its causes were known or should have been known through the exercise of reasonable diligence. Colo. Rev. Stat. § 13-80-108(1); *Motion* [#24] at 6; *Response* [#25] at 4.  Defendant maintains that Plaintiff knew that his claim was denied on August 20, 2012 based on the entry in its claim notes reflecting that Defendant called Plaintiff's attorney on that day.  *Motion* [#24] at 6.  Defendant, therefore, argues that Plaintiff's claim accrued on August 20, 2012.  Plaintiff argues that he did not know his claim was denied on that date and that the December Letter indicates that a decision had not been made as of the date of the December Letter.

Defendant's analysis relies on its assumption that Plaintiff settled with State Farm and received payment on July 23, 2012.  The law is clear—and the parties agree—that:

> Until an insured recovers from the tortfeasor, the insurer cannot know the amount of UIM benefits potentially due to its insured. *Freeman v. State Farm Mut. Auto. Ins. Co.*, 946 P.2d 584, 586 (Colo.App. 1997). Thus, a bad faith claim for nonpayment of UIM benefits cannot accrue until the insured has obtained a judgment against or, as here, settled with the underinsured driver.

*Cork v. Sentry Ins.*, 194 P.3d 422, 428 (Colo. App. 2008); *Zbeger v. Allied Prop. & Cas. Ins. Co.*, 455 F. App'x 820, 826 (10th Cir. 2011) (unpublished Order and Judgment).  As discussed above, there is a genuine dispute about when Plaintiff settled with State Farm.

What is clear is that Plaintiff sent a letter to State Farm on August 22, 2012 informing State Farm that he "accepts State Farm's offer to resolve his liability claim . . . ." *August 2012 Letter* [#25-2] at 1.  As a result, based on the information in the record, it is likely that this cause of action accrued on August 22, 2012.  However, Plaintiff's response to Interrogatory No. 27 confuses this question.  Regardless, the Court cannot grant summary judgment because the accrual date of this claim is an open question based on the information in the record.  Accordingly, the Court **denies** the Motion to the extent it seek summary judgment on Plaintiff's bad faith breach of contract claim.

**E.      Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 Claim**

Defendant maintains that this claim is governed by a one-year statute of limitations. *Motion* [#24] at 7.  Plaintiff does not address this contention and simply incorporates by reference his argument regarding his bad faith breach of contract claim, which, as discussed above, is governed by a two-year statute of limitations.  *Response* [#25] at 5. The Court recently addressed the question of whether claims brought pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 are governed by the two-year statute of limitations that governs bad faith claims or the one-year statute of limitations that governs statutory penalties.  The Court held that claims brought under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 are "subject to a one-year statute of limitations, pursuant to Colo. Rev. Stat. § 13-80-103(1)(d) . . . ." *Gerald H. Phipps, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 14-cv-01642-PAB-KLM, 2015 WL 5047640, at \*3 (D.C. Colo. Aug. 27, 2015).  The Court found that these claims are penalties "as opposed to [claims] for actual damages." *Id.* at \*1.[9]

---

[9] The Court is aware of prior case law in which the Court analyzed claims brought under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 applying a two-year statute of limitations.  *See, e.g.,*

15

The question then becomes when Plaintiff's statutory claims accrued. Claims for violation of §§ 10-3-1115 and 10-3-1116 "accrue in the same manner as bad faith claims." *Wardcraft Homes*, 70 F.Supp.3d at 1212. A bad faith cause of action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(1). As analyzed above, such a claim could not accrue before Plaintiff received payment from State Farm—a disputed fact in this case. Defendant argues that its claim notes indicate that Defendant contacted Plaintiff's attorney on August 20, 2012 and "[l]et them know we feel [Plaintiff] has been fully compensated for the claim and that I will follow up with a letter." *Motion, Ex. C* [#24-3] at 1. They also reflect that on August 21, 2012, Plaintiff's counsel called Defendant and "thanked [them] for the notice of the denial at this time. [Plaintiff] is actually going back for additional treatment from a neurologist so he is not completely done yet. Let her know I would keep the file open. She asked about subro and their authority to settle with the underlying carrier. . . ." *Id.* Plaintiff cites to the December Letter [#25-8] to support his position that as late as December 21, 2012, he was not aware that Defendant was denying his claim. The December Letter states, in pertinent part:

> Please provide the status of your client's claim. If you have documentation, medical bills, and/or records, please forward for our review.
>
> Please forward any additional medical information you have received since our last correspondence. If your client has completed treatment, please contact me to discuss the possibility of settlement.
>
> Please have your client complete the enclosed authorization(s) so that we

---

*Wardcraft Homes, Inc. v. Employers Mut. Cas. Co.*, 70 F.Supp.3d 1196, 1212 (D. Colo. 2014). However, such cases generally did not draw a distinction between the tort of bad faith breach of contract and the associated statutory claims because the parties did not raise this issue. *Id.*

might obtain updated medical and/or wage loss information.

*December Letter* [#25-8] at 1.

Notably, neither party provided the Court with a letter or other written correspondence from Defendant informing Plaintiff that his claim was denied. Further, Plaintiff does not inform the Court on what date he believes he was notified that his claim was denied. However, Plaintiff would not have filed this lawsuit if his claim was not denied so there must have been a day on which Plaintiff knew his claim was denied by Defendant. Plaintiff's lack of clarity regarding his position is troubling.

However, regardless of the lack of clarity, the Court must carefully consider the claim notes and the December Letter to determine whether there is a genuine dispute as to a material fact. There are two key entries in the claim notes. The first is an August 20, 2012 entry reflecting that Plaintiff's counsel was called and told that Defendant believed that Plaintiff " ha[d] been fully compensated for the claim . . . ." *Motion, Ex. C* [#24-3] at 1. The second entry is dated August 21, 2012 and states that Plaintiff's counsel called Defendant and "thanked us for the notice of the denial at this time." *Id.* However, the August 20, 2012 entry does not state that the claim was *denied* and Defendant provides no evidence of such a denial. In addition, the December Letter asks Plaintiff to provide medical information and asks Plaintiff's counsel to contact Defendant's claims adjuster "to discuss the possibility of settlement." *December Letter* [#25-8] at 1. The instant action was filed on August 21, 2014. As a result, the December Letter's mention of settlement cannot possibly be suggesting settlement of this lawsuit. Instead, the December Letter seems to relate to possible settlement of Plaintiff's insurance claim. As a result, the Court must conclude that whether Plaintiff received notice of denial of his claim on August 20, 2012 is a genuine

disputed fact.

Because the Court cannot determine when Plaintiff received notice of the denial of his claim, the Court cannot determine as a matter of law when this cause of action accrued. Therefore, without further information from the parties clarifying when Plaintiff received notice of denial of his claim, the Court **denies** the Motion to the extent it seeks summary judgment with regard to Plaintiff's statutory claim.

### V.  Conclusion

Accordingly, for the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#24] is **DENIED**.

Dated:  December 8, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge